# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

CLAYTON LAMONT VANN,
ADC #108062                                                                                    PLAINTIFF

V.                                      5:14CV00118 KGB/JTR

CONNIE HUBBARD, APN;
Varner Unit, ADC, et al.                                                                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Kristine G. Baker. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

# I. Introduction

Plaintiff, Clayton Lamont Vann, has filed this *pro se* action alleging that Defendants violated his constitutional right to adequate medical care, as protected by 42 U.S.C. § 1983, and committed the pendent state tort of medical malpractice. Specifically, he alleges that, while he was confined in a segregation cell at the Varner Super Max Unit ("VSM") from April 3, 2013 to August 6, 2013: (1) Defendants Nurse Aleeshia Quinones, APN Connie Hubbard, and Doctor Ojiugo Iko failed to properly treat his right inguinal hernia; and (2) Defendant Infirmary Manager Deborah York reviewed his grievances about the medical care he was receiving for his hernia, but failed to take corrective action.[1] *Docs. 2 & 36.*

The parties have filed Cross-Motions for Summary Judgment. *Docs. 69, 70, 71, 72, 81, 90, 91, 92, 93, 94, 95, 96, 98, 99, & 100.* The Court recommends that Plaintiff's Motion for Summary Judgment be denied, and that Defendants' Motion for Summary Judgment be granted.[2] Accordingly, Plaintiff's § 1983 inadequate medical

---

[1] On April 27, 2015, the Court ruled that Plaintiff had properly exhausted his administrative remedies *only for the April 3, 2013 to August 6, 2013 time period. Doc. 86.* Thus, the Court will not address any unexhausted claims that arose outside of that time period.

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City*

care claims should be dismissed, with prejudice, and the Court should decline to exercise supplemental jurisdiction over his pendent state medical malpractice claims.

## II. Facts

The relevant undisputed facts contained in the record, viewed in the light most favorable to Plaintiff, are as follows:

1. On March 29, 2013, Plaintiff filed a sick call request seeking medical treatment for a lump that "popped out" of his groin while he was "working out." *Doc. 91, Ex. 1 at 7.*

2. On April 1, 2013, Plaintiff was scheduled to be seen at his cell by a nurse during her daily segregation rounds. However, Plaintiff chose to go to yard call instead of waiting to see the nurse. *Id. at 6-18.*

3. On April 3, 2013, Plaintiff complained to Defendant Nurse Quinones, while she was conducting daily segregation rounds, that a nurse had failed to see him on April 1, 2013. Defendant Quinones instructed Plaintiff to submit a new sick call request, and he did so. *Id.*

4. On April 4, 2013, Plaintiff was examined in the infirmary by a nurse, who recommended that Plaintiff be seen by a mid-level medical provider for evaluation of a possible hernia. She also instructed Plaintiff to refrain from any

---

*of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

exercise. Defendant APN Hubbard, who is a mid-level medical provider, was scheduled to examine Plaintiff in the infirmary later that day. She, however, was unable to do so because an unspecified "medical emergency" occurred in the infirmary. *Id. at 8.*

5. During the next four days, the nurses conducted segregation rounds and noted that Plaintiff did *not* have any complaints, and he did *not* exhibit any signs of distress. *Id.*

6. On April 9, 2013, Defendant APN Hubbard examined Plaintiff in the infirmary. She diagnosed Plaintiff with a right inguinal hernia that was approximately the size of a tennis ball. Because the hernia was easily reducible, Defendant Hubbard decided to treat it conservatively, and instructed Plaintiff to: (a) wear a hernia belt; (b) continue his pre-existing order for Naproxen; and (c) follow the lifting and weight restrictions she was imposing on him. *Id. at 9-15; Doc. 71 at 16 & 38.*

7. During the next month and a half, the nurses conducting daily segregation rounds noted that Plaintiff did *not* have any complaints, and he did *not* exhibit any signs of distress. *Doc. 91, Ex. 1 at 15-23.*

8. On May 28, 2013, Plaintiff complained to a nurse that the hernia belt was not working and that his pain had increased. The nurse recommended that Plaintiff be examined by mid-level medical provider, and she instructed Plaintiff to refrain

from any exercise. *Id.*

9. On June 1, 2013, Defendant APN Hubbard examined Plaintiff in the infirmary. She noted that Plaintiff's hernia was easily reduced with "a light touch" and that it "had not descended into the scrotum." She recommended that Plaintiff be seen by Defendant Dr. Iko to discuss his request for corrective surgery. *Id. at 24*.

10. On June 17, 2013, Defendant Dr. Iko examined Plaintiff and determined that he had a "3 to 4 inch" right inguinal hernia that "was easily reducible," "non-incarcerated," and not extended into the scrotum. Defendant Iko also noted that Plaintiff "ambulated without difficulty," was able to perform his daily functions, and exhibited "very minimal tenderness." Accordingly, Defendant Iko concluded that surgical intervention was not appropriate. Instead, he recommended that Plaintiff continue to be treated conservatively with a hernia belt and work/lifting restrictions. *Id. at 28*.

11. From June 18, 2013 to August 6, 2013, Plaintiff made no complaints, and there are no medical notes suggesting that he exhibited any signs of distress during daily segregation rounds.[3] *Id. at 28-38.*

---

[3] In December of 2013, ADC medical providers determined that surgical repair was necessary because Plaintiff's hernia "had started to enlarge and was no longer easily reducible." Reparative surgery was performed on January 17, 2014. *Doc. 91, Ex. 1 at 5 and Ex. 2 at 2*. Plaintiff's summary judgment papers address the medical care he received immediately prior to and after that surgery. However, as previously mentioned, the Court has ruled that Plaintiff did *not* properly exhaust any medical care claims that arose *after August 6, 2013*.

12. In their sworn affidavits, Defendants Hubbard and Iko state that conservative treatment with a hernia belt and work/lifting restrictions was medically appropriate to treated Plaintiff's hernia until it enlarged and was no longer reducible. They also state that this conservative treatment had "no adverse effects on Plaintiff's prognosis" and was "consistent with sound medical practices." *Doc. 91, Ex. 1 at 5 & Ex. 2 at 2*.

### III. Discussion

#### A. § 1983 Inadequate Medical Claim Against Defendants Quinones, Hubbard, & Iko

Plaintiff alleges that Defendants Quinones, Hubbard, and Iko failed to provide him with constitutionally adequate medical care for his right inguinal hernia. To prevail on that claim, Plaintiff must prove that: (1) he had objectively serious medical needs; and (2) Defendants subjectively knew of, but deliberately disregarded, those serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The parties agree that Plaintiff's inguinal hernia constituted an objectively serious medical need. Thus, the only issue is whether Defendants Quinones, Hubbard, and Iko were deliberately indifferent to Plaintiff's need for treatment for that medical condition. It is well settled that negligence, gross negligence, or a mere disagreement

with the course of medical care does not constitute deliberate indifference. *Langford,* 614 F.3d at 460. Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Nothing in the record suggests that any of the Defendants were deliberately indifferent in their treatment of Plaintiff's right inguinal hernia. Instead, the *undisputed medical evidence* demonstrates that on her single encounter with Plaintiff, on April 3, 2013, Defendant Quinones properly instructed Plaintiff to submit a sick call request, and he was seen by a nurse the following day. Similarly, Plaintiff has failed to come forward with *any medical evidence* suggesting that Defendants Hubbard and Iko were deliberately indifferent when they decided, in their professional medical judgment, to conservatively treat Plaintiff's easily reducible hernia with a hernia belt, Naproxen, and lifting/weight restrictions. *See Dulany,* 132 F.3d at 1239 ("inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment"); *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) ("In the face of medical records indicating that treatment was provided and physician affidavits

indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"). Further, there is no evidence that Plaintiff was harmed by their decision to delay corrective surgery until his hernia was no longer easily reducible. *See Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (to avoid summary judgment, an inmate must produce verifying medical evidence demonstrating that defendants ignored a critical or escalating medical situation, or that the delay adversely affected his prognosis); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same).

Finally, Plaintiff alleges that Defendants did not adequately treat his pain. However, the undisputed evidence demonstrates that Defendants continued Plaintiff's prescription for Naproxen, and nothing in the medical record suggests that Plaintiff complained of pain to the nurses during daily segregation rounds or during his visits to the infirmary. Thus, Defendants Quinones, Hubbard, and Iko are entitled to summary judgment, and the § 1983 inadequate medical claims raised against them should be dismissed, with prejudice.

**B.     § 1983 Corrective Inaction Claim Against Defendant York**

Plaintiff alleges that Defendant York violated his constitutional rights when she read his grievances about the medical care he was receiving for his hernia, but failed to take corrective action. That claim fails, as a matter of law, because Plaintiff has not

demonstrated that his constitutional right to receive adequate medical care was violated. *See Parrish v. Ball,* 594 F.3d 99, 1002 (8th Cir. 2010) (explaining that, to prevail on a corrective inaction claim, a prisoner must establish that the defendants were aware that his constitutional rights were being violated, but failed to take corrective action)*; Sims v. Lay*, Case No. 05-2136, 2007 WL 328769 (8th Cir. Feb. 2, 2007) (unpublished decision) (holding that a supervisory liability claim fails, as a matter of law, when there has been no underlying constitutional violation). Thus, Defendant York is entitled to summary judgment, and the § 1983 corrective inaction claim raised against her should be dismissed, with prejudice.

**C.    Pendent State Medical Malpractice Claim**

The parties' summary judgment papers do not address the pendent medical malpractice claim Plaintiff raised in his Complaint and Amended Complaint *Docs. 2 & 36*. Nevertheless, because Defendants are entitled to dismissal of the § 1983 claims raised against them, the Court should decline to exercise supplemental jurisdiction over Plaintiff's sole remaining claim, which alleges an Arkansas medical malpractice action. *See* 28 U.S.C. § 1367(c)(3); *Williams v. Hobbs*, 658 F.3d 842, 843 (8th Cir. 2011).

### IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.   Plaintiff's Motion for Summary Judgment *(Doc. 69)* be DENIED.

2.   Defendants' Motion for Summary Judgment *(Doc. 90)* be GRANTED.

3.   Plaintiff's § 1983 claims be DISMISSED, WITH PREJUDICE, and his pendent state medical malpractice claims be DISMISSED, WITHOUT PREJUDICE.

4.   The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

Dated this 29th day of June, 2015.

 _____
UNITED STATES MAGISTRATE JUDGE